MICHAEL R. LOZEAU (State Bar No. 142893)
DOUGLAS J. CHERMAK (State Bar No. 233382)
Lozeau Drury LLP
410 12th Street, Suite 250
Oakland, CA 94607
Tel: (510) 836-4200
Fax: (510) 836-4203 (fax)
E-mail: michael@lozeaudrury.com
          doug@lozeaudrury.com

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>                Plaintiff,<br><br>        vs.<br><br>COUNTY OF SONOMA,<br><br>                Defendant. | Case No. 3:13-cv-000362-JCS<br><br>**STIPULATION TO DISMISS PLAINTIFF'S CLAIMS; [PROPOSED] ORDER GRANTING DISMISSAL [FRCP 41(a)(2)]** |

WHEREAS, on November 9, 2012, Plaintiff California Sportfishing Protection Alliance ("CSPA") provided Defendant County of Sonoma ("Sonoma") with a Notice of Violations and Intent to File Suit ("Notice") under Clean Water Act § 505, 33 U.S.C. § 1365.

WHEREAS, on January 25, 2013, CSPA filed its Complaint against Sonoma in this Court, *California Sportfishing Protection Alliance v. County of Sonoma,* Case No. 3:13-cv-000362-JCS. Said Complaint incorporates by reference all of the allegations contained in CSPA's Notice.

WHEREAS, CSPA and Sonoma, through their authorized representatives and without either adjudication of CSPA's claims or admission by Sonoma of any alleged violation or other wrongdoing, have chosen to resolve in full by way of settlement the allegations of CSPA as set forth in the Notice and Complaint, thereby avoiding the costs and uncertainties of further litigation.  A

1   copy of the Settlement Agreement and Mutual Release of Claims ("Settlement Agreement"), without

2   the attached exhibits, entered into by and between CSPA and Sonoma is attached hereto as Exhibit 1

3   and incorporated by reference.

4          WHEREAS, the parties submitted the Settlement Agreement via certified mail, return receipt

5   requested, to the U.S. EPA and the U.S. Department of Justice and the 45-day review period set

6   forth at 40 C.F.R. § 135.5 has completed and the federal agencies have submitted correspondence to

7   the Court indicating that they have no objection to the terms of the Settlement Agreement.

8          NOW THEREFORE, IT IS HEREBY STIPULATED and agreed to by and between the

9   parties that CSPA's claims, as set forth in the Notice and Complaint, be dismissed.  The parties

10  respectfully request an order from this Court dismissing such claims.  In accordance with paragraph

11  2 of the Settlement Agreement, the parties also request that this Court maintain jurisdiction over the

12  parties through December 16, 2017, for the sole purpose of resolving any disputes between the

13  parties with respect to enforcement of any provision of the Settlement Agreement.

14         This Dismissal may be pled as a full and complete defense to, and may be used as the basis

15  for an injunction against any lawsuit which may be filed in breach of the Settlement Agreement.

16

17  Dated: November 7, 2013              Respectfully submitted,

18                                       LOZEAU DRURY LLP

19

20                                       By:   _/s/ *Douglas J. Chermak*_____
21                                             Douglas J. Chermak
                                             Attorneys for Plaintiff California Sportfishing
22                                            Protection Alliance

23                                       COUNTY OF SONOMA

24

25                                       By:   _*David McFadden* (as authorized on 11/7/13)___
                                             David McFadden
26                                            Attorney for Defendant
                                             County of Sonoma

27

28

**[PROPOSED] ORDER**

Good cause appearing, and the parties having stipulated and agreed,

IT IS HEREBY ORDERED that Plaintiff California Sportfishing Protection Alliance's claims against Defendant County of Sonoma, as set forth in the Notice and Complaint filed in Case No. 3:13-cv-000362, are hereby dismissed.

IT IS FURTHER ORDERED that the Court shall retain jurisdiction over the parties through December 16, 2017, for the sole purpose of enforcing compliance by the parties of the terms of the Settlement Agreement, attached to the parties' Stipulation to Dismiss as Exhibit 1.

PURSUANT TO STIPULATION, IT IS SO ORDERED.


Dated:   _____, 2013                    _____

                                                            Judge Joseph C. Spero
                                                            United States Magistrate Judge

# EXHIBIT 1

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS

This Settlement Agreement and Mutual Release of Claims ("AGREEMENT") is entered into between the California Sportfishing Protection Alliance ("CSPA") and the County of Sonoma ("Sonoma") (collectively, the "SETTLING PARTIES") with respect to the following facts and objectives:

## RECITALS

**WHEREAS**, CSPA is a 501(c)(3) non-profit, public benefit corporation organized under the laws of the State of California, dedicated to the protection, enhancement, and restoration of the San Pablo Bay, the San Francisco Bay, the Sacramento-San Joaquin Delta, and other California waters. Bill Jennings is the Chairperson of CSPA and a member of CSPA;

**WHEREAS**, Sonoma is a county organized under the laws of California, which owns and operates an industrial facility, called Sonoma Transfer Station, located at 4276 Stage Gulch Road in Sonoma, California (the "Facility") that discharges storm water associated with industrial activity pursuant to State Water Resources Control Board Water Quality Order No. 97-03-DWQ, National Pollutant Discharge Elimination System General Permit No. CAS000001, Waste Discharge Requirements for Discharges of Storm Water Associated with Industrial Activities Excluding Construction Activities (hereinafter, the "1997 General Permit"[1]). A map of the Facility is attached hereto as Exhibit A and incorporated by reference;

**WHEREAS**, on or about November 9, 2012, CSPA provided Sonoma with a Notice of Violation and Intent to File Suit ("60-Day Notice Letter") under Section 505 of the Federal Water Pollution Control Act (the "Act" or "Clean Water Act"), 33 U.S.C. § 1365;

**WHEREAS**, on January 25, 2013, CSPA filed its Complaint in the United States District Court for the Northern District of California (*California Sportfishing Protection Alliance v. County of Sonoma,* Case No. 3:13-cv-00362-JCS). A true and correct copy of the Complaint,

---

[1] Unless indicated otherwise, references to "General Permit" in this document without the qualifier "1997" refer to the General Permit that is applicable to the Facility as of the date of this Agreement or any new General Permit which becomes applicable during the term of this Agreement.

including the 60-Day Notice Letter, is attached hereto as Exhibit B and incorporated by reference;

**WHEREAS**, Sonoma denies any and all of CSPA's claims in its 60-Day Notice Letter and Complaint;

**WHEREAS**, CSPA and Sonoma, through their authorized representatives and without either adjudication of CSPA's claims or admission by Sonoma of any alleged violation or other wrongdoing, have chosen to resolve in full CSPA's allegations in the 60-Day Notice Letter and Complaint through settlement and avoid the cost and uncertainties of further litigation; and

**WHEREAS**, CSPA and Sonoma have agreed that it is in their mutual interest to enter into this AGREEMENT setting forth the terms and conditions appropriate to resolving CSPA's allegations set forth in the 60-Day Notice Letter and Complaint.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, CSPA and Sonoma hereby agree as follows:

## EFFECTIVE DATE

1.      The term "Effective Date," as used in this AGREEMENT, shall mean the last date on which the signature of a party to this AGREEMENT is executed.

## COMMITMENTS OF CSPA

2.      **Stipulation to Dismiss and [Proposed] Order.** Within ten (10) calendar days of the expiration of the Agencies' review period specified in Paragraph 19 below, CSPA shall file a Stipulation to Dismiss and [Proposed] Order thereon pursuant to Federal Rule of Civil Procedure 41(a)(2) with the United States District Court for the Northern District of California ("District Court"), with this AGREEMENT attached and incorporated by reference, specifying that CSPA is dismissing all claims in CSPA's Complaint. Consistent with Paragraphs 25 and 26 herein, the Stipulation to Dismiss and [Proposed] Order shall state that the District Court will maintain jurisdiction through December 16, 2017, or through the conclusion of any proceeding to enforce this AGREEMENT, for purposes of resolving any disputes between the SETTLING PARTIES

with respect to any provision of this AGREEMENT.  If the District Court chooses not to enter the Order, this AGREEMENT shall be null and void.

**COMMITMENTS OF SONOMA**

3.      **Compliance with General Permit.**  Sonoma agrees to operate the Facility in compliance with the applicable requirements of the General Permit and Clean Water Act.

4.      **Implemented Storm Water Controls**.  Sonoma agrees that Sonoma shall maintain in good working order all storm water collection and treatment systems currently installed or to be installed pursuant to this AGREEMENT, including but not limited to, existing housekeeping measures.

5.      **Additional Structural Best Management Practices.**  Sonoma shall implement the following structural best management practices ("BMPs") to improve the storm water pollution prevention measures at the drop inlets, outfalls, and other industrial areas at the Facility by the times indicated:

a.      By October 1, 2013, Sonoma shall select new, interim storm water outfall and sampling locations that are representative of all of the storm water discharges from the various drainage areas at the Facility.  To the extent practicable, such outfall locations shall not include or capture any run-on or flows from outside of the industrial areas at the Facility itself.  These new outfall locations are labeled on Exhibit A-1.  Sonoma shall monitor and analyze discharges from these new outfall locations during the 2013-2014 wet season.

b.      By October 1, 2013, Sonoma shall install catch basin filters in all drop inlets at the Facility designed to capture debris and sediment, but not significantly reduce flow.  Sonoma shall implement Triton filters manufactured by REM or the equivalent.

c.      By October 1, 2013, Sonoma shall install removable covers on all existing drop inlets at the Facility to prevent the accumulation of dirt, leaves and

3

other sediment in the inlets and drains. The covers shall be installed on all drop inlets on or before July 1st at the end of each wet season. The covers shall be removed prior to the first rain event of the subsequent wet season. The covers shall be fitted to prevent such materials from entering the drop inlets and designed such that the covers will remain firmly in place while there is normal activity at the Facility.

d.    By November 1, 2013, Sonoma shall repave the portions of the Facility shown on Exhibit A-1.

e.    By October 1, 2013, Sonoma shall cover the storage bins, stored outside near the transfer station tipping floor, in anticipation of and during any storm events, as well as when the Facility is closed.

f.    By October 1, 2013, Sonoma shall stop industrial use of the area designated as "No Industrial Use" on Exhibit A-1.

g.    By October 1, 2014, Sonoma shall vegetate the area designated as "No Industrial Use" on Exhibit A-1 to slow down storm water runoff.

h.    By October 1, 2014, Sonoma shall modify the storm water outfall locations described above in Paragraph 5(a) to create a new single storm water outfall and sampling point, designation to be determined by Sonoma, that shall represent the confluence of all of the storm water discharges from the Facility. It shall include all discharges from both the recycling center and transfer station portions of the Facility. Sonoma shall create a separate channel to ensure that all storm water discharges from the closed landfill adjacent to the Facility do not, to the extent feasible, commingle with the storm water discharges from the Facility. The location of the new outfall and sampling point and the new channel adjacent to the landfill is shown on Exhibit A.

i.    By October 1, 2014, Sonoma shall either enhance the vegetated swales shown on Exhibit A with native plants designed to slow down storm water

flows and improve the quality of storm water as it flows towards the new outfall, described above in Paragraph 5(h), or Sonoma shall isolate the swales from storm water runoff from industrial operations at the Facility by implementing additional drop inlets and thus re-routing the flow of storm water.

6.   **Additional Non-structural Best Management Practices.**   By October 1, 2013, Sonoma shall implement the following non-structural best management practices ("BMPs") to improve the storm water pollution prevention measures at the drop inlets, outfalls, and other industrial areas at the Facility:

a.   Sonoma shall implement a program to clean out and dispose of the accumulated sediment in the swale adjacent to the transfer station tipping floor, shown on Exhibit A, monthly as well as prior to each predicted storm event when necessary.

b.   Sonoma shall remove the oil and grease stains in front of the transfer station tipping floor.  Sonoma shall enhance its spill prevention program with additional employee training in proper spill response and clean-up techniques.

c.   Sonoma shall use a regenerative sweeper to sweep all paved areas through the Facility at least twice per week during the wet season (October 1 – May 30), in anticipation of any predicted storm events, and once per week during the dry season (June 1 – September 30).  Sonoma shall maintain a log of sweeping activity.

7.   **Monitoring**.  Sonoma agrees to perform the monitoring described herein during the 2013-2014, 2014-2015, and 2015-2016 wet seasons.

a.   During the 2013-2014 wet season and 2014-2015 wet seasons, Sonoma shall sample and analyze storm water discharges from four (4) qualifying storm events that result in discharge consistent with the requirements and protocols set forth in the General Permit, to the extent that four (4

5

qualifying storm events occur during each wet season. If Sonoma has not sampled four (4) qualifying storm events by February 1 of the wet season, then it shall sample up to four (4) storm events that results in any discharges during normal operating hours, regardless of whether they are qualifying storm events." During the 2015-2016 wet season, Sonoma shall sample and analyze storm water discharges in accordance with the version of the General Permit in place during that season. For any of the discharges sampled pursuant to this section, if a new version of the General Permit is issued, the requirements and protocols in the new permit shall be applicable with respect to the definition of a qualifying storm event.

b.     Sonoma shall analyze each storm water sample taken in accordance with the General Permit and this Agreement for, at a minimum, total suspended solids, pH, oil and grease, zinc, aluminum, iron, lead, chemical oxygen demand, and copper.

c.     Sonoma shall conduct monthly visual observations of its discharge location for at least one qualifying rain event per month that results in any discharge from the Facility. During each inspection, Sonoma shall photograph the storm water discharge location.

d.     All photographs required by this Settlement Agreement shall be in color and electronically formatted. Each photograph shall be identified by date, the person taking the photograph and the location of the Facility being photographed. The title of each electronic photograph shall include, at a minimum, the date it was taken, the initials of the person taking the photograph and the location of the photographed area (for example, "2013.4.10 DJC O-A"). On or before July 30th of each year of this agreement, all photographs required by this Settlement Agreement for the prior year shall be provided to CSPA upon request via compact disc(s).

e.   All maintenance, repair, and replacement activities relating to the Facility's storm water management program shall be recorded and described on appropriate log books or sheets.  Such logs shall include, but not be limited to, filter repairs and replacements.  Sample log sheets shall be included in the Facility's SWPPP.  Completed logs for each wet season shall be maintained with the Facility's SWPPP and available for review upon request.

8.   **Monitoring Results.**  Results from the sampling and analysis at the Facility during the term of this AGREEMENT shall be provided to CSPA within 30 days of receipt of the sampling results by Sonoma or its counsel.

9.   **Action Plan Regarding Exceedance of Levels of Concern.**

a.   For the purpose of sampling under this Agreement, the following levels of concern are established – Total Suspended Solids: 100 mg/L; pH: 6.0-9.0 s.u.; and Oil & Grease: 15 mg/L;; Zinc: 0.262 mg/L; Aluminum: 0.75 mg/L; Iron: 1.0 mg/L; Lead: 0.262 mg/L; Chemical Oxygen Demand: 120 mg/L; and Copper: 0.0332 mg/L If the next version of the General Permit is issued and contains action levels for any of the aforementioned parameters, then those action levels will replace the levels of concern specified above to the extent that they address the same pollutant.

b.   If any particular level of concern is exceeded in any sampling events in the 2014-2015 wet season, Sonoma shall prepare an Action Plan discussing:

(1)   Any exceedance or exceedances;

(2)   An explanation of the possible cause(s) and/or source(s) of any exceedance;

(3)   Responsive actions to improve its storm water management practices;

(4)   Other modified or additional feasible best management practices ("BMPs") to be considered to further reduce the possibility of future exceedance(s).

c.   If exceedances of a level or levels of concern occur during sampling events in the 2014-2015 wet season, Sonoma shall submit an Action Plan or Exception to Action Plan as

7

described in this Paragraph 9.  If Sonoma submits an Action Plan, the Action Plan shall include an evaluation and selection of either an active storm water treatment system, retention pond system (including an underground storm chamber), or other technology or system with the goal of reducing the levels of all parameters to at or below the levels of concern.  The Action Plan shall either contain design plans for the treatment system, the retention pond or other technology or shall include a schedule to send design plans to CSPA not later than sixty (60) days following the due date of the Action Plan.  Such Action Plan shall be e-mailed and sent via first class mail to CSPA not later than July 30, 2015.

      d.     If Sonoma selects an active treatment system or other technology, it shall be installed by November 1, 2015, except as provided in this Paragraph 9 below.  Sonoma shall consider installing either an appropriately-sized multi-phase complete storm water treatment system manufactured by H2O Storm Water Systems ("H2O System") or a system manufactured by StormwateRx consisting of a Clara Plug Flow Separator, Retenu Roughing Filtration System, and an Aquip Enhanced Filtration unit (collectively "StormwateRx System").  In the alternative, Sonoma may install a system or systems in which the system specifications and performance data reasonably demonstrate to Sonoma's consultant(s) and CSPA's consultant(s) that the levels of concern will likely be met during operation of the system for the design event or intensity.  If CSPA's consultants do not concur, then the Parties shall proceed in accordance with the meet and confer provisions pursuant to Paragraph 11 below.  Any system shall be installed at a point downstream of the confluence of all storm water flows from the Facility and prior to discharge at the new outfall described above in Paragraph 5(h).  Any treatment system selected must be sized according to one of the following methods:

      (1)   The maximum flow rate of runoff produced from a rainfall intensity of 0.2 inch/hr for each hour of a storm event;

      (2)   The maximum flow rate of runoff produced by the 85th percentile hourly rainfall intensity, as determined from local historical rainfall records, multiplied by a factor of two; or,

      (3)   The maximum flow rate of runoff, as determined using local historical rainfall records, that achieves approximately the same reduction in pollutant loads and

flows as achieved by mitigation of the 85th percentile hourly rainfall intensity multiplied by a factor of two.

The foregoing design criteria are in the current draft General Permit. Should the design criteria in the final General Permit be more or less stringent that the foregoing design criteria, the foregoing design criteria shall govern the determination of Defendant's compliance with all provisions of this AGREEMENT. During the term of this AGREEMENT and until the date specified in Paragraph 23, Plaintiff shall not seek to require that Defendant design or construct any treatment system that may be required by this AGREEMENT to any more stringent design criteria that may be in the final General Permit.

e.  If Sonoma selects a retention pond, it shall be installed by October 1, 2016, except as provided in this Paragraph 9 below. The pond must be sized to treat the volume sized in accordance with one of the following methods:

(1)  The volume of runoff produced from an 85th percentile 24-hour storm event;

(2)  The volume of runoff produced by the 85th percentile 24-hour storm event, determined as the maximized capture runoff volume for the facility, from the formula recommended in the Water Environment Federation's Manual of Practice (Water Environment Federation (WEF). Manual of Practice No. 23/ ASCE Manual of Practice No. 87, cited in chapter 5 (1998 Edition) and Cited in Chapter 3 (2012 Edition); or,

(3)  The volume of annual runoff based on unit basin storage volume, to achieve 90% or more volume treatment by the method recommended in the latest edition of California Stormwater Best Management Practices Handbook.

The foregoing design criteria are in the current draft General Permit. Should the design criteria in the final General Permit be more or less stringent that the foregoing design criteria, the foregoing design criteria shall govern the determination of Defendant's compliance with all provisions of this AGREEMENT. During the term of this AGREEMENT and until the date specified in Paragraph 23, Plaintiff shall not seek to require that Defendant design or construct any retention pond that may be required by this AGREEMENT to any more stringent design criteria that may be in the final General Permit.

If Sonoma chooses to install a retention pond, Sonoma shall send digital pictures to CSPA demonstrating and confirming the installation of the retention pond by October 15, 2016, or within fifteen (15) days after completion.

f. If Sonoma detects exceedances of level(s) of concern which are insignificant or believed to be an anomaly and contends that such exceedances can be remedied by another method, or will not repeat and, as a result, that Sonoma should be relieved of its commitment to install an active treatment system or a retention pond, then Sonoma shall submit to CSPA a detailed description no later than 30-days prior to the due date of the Action Plan describing why such exceedance(s) are insignificant and how they can be remedied, and/or why the exceedances(s) are an anomaly and will not be repeated, and why Sonoma should not be required to install said treatment or pond ("Exception to Action Plan"). The parties shall meet and confer over the conclusions of the Exception to Action Plan within thirty (30) days of CSPA's receipt of the Exception to Action Plan. If CSPA does not concur with the request set forth in the Exception to Action Plan or to the proposals detailed in the Action Plan, the Parties shall proceed in accordance with the meet and confer provisions for the Action Plan and Exception to Action Plan pursuant to Paragraph 11 below.

g. <u>Exception to Installation Deadlines</u>: The parties recognize that Sonoma must comply with design and bidding requirements of state law and state and local permitting requirements, depending on the type of system proposed, which may delay installation, and that construction/installation may also be delayed due to onset of an early or excessive wet season. If a delay is to occur due to bidding or permitting requirements or has been caused by early/excessive onset of a wet season, Sonoma shall notify CSPA in writing before the deadline in question with the reason for the delay and an estimate of when the installation will be complete. If the estimate of the delay is greater than sixty (60) days from the deadline, CSPA may invoke dispute resolution procedures in this Agreement to address any concern regarding the delay.

10. Any measures set forth in the Action Plan other than the storm water treatment system described in Paragraph 9 shall be implemented as described in Paragraph 9, except where

the SETTLING PARTIES agree in writing to defer implementation of specific measures in order to effectively meet and confer in accordance with Paragraph 11. Within thirty (30) days of implementation, Facility's SWPPP shall be amended to include all additional BMP measures designated in the Action Plan.

11. Upon receipt of the Action Plan or Exception to Action Plan, CSPA may review and comment on any proposed active storm water treatment system, retention pond or other technology, any additional proposed BMPs, or any other explanations. If requested by CSPA within thirty (30) days of receipt of such Action Plan or Exception to Action Plan, CSPA and Sonoma shall meet and confer and conduct a site inspection within sixty (60) days after the due date of the Action Plan or Exception to Action Plan to discuss the contents of the Action Plan/Exception to Action Plan and the adequacy of proposed measures to improve the quality of the Facility's storm water to levels at or below the levels of concern. If within twenty-one (21) days of the parties meeting and conferring, the parties do not agree on the adequacy of the additional measures set forth in the Action Plan or the explanations set forth in the Exception to Action Plan, the SETTLING PARTIES may agree to seek a settlement conference with the Magistrate Judge assigned to this action pursuant to Paragraphs 25 and 26 below. If the SETTLING PARTIES fail to reach agreement on additional measures, CSPA may bring a motion before the District Court consistent with Paragraphs 25 and 26 below. If CSPA does not request a meet and confer regarding the Memorandum within the thirty (30) day comment period provided for in this paragraph, CSPA shall waive any right to object to such Action Plan or Exception to Action Plan pursuant to this AGREEMENT.

12. Any concurrence or failure to object by CSPA with regard to the reasonableness of any additional measures or adequacy of an active storm water treatment system required by this AGREEMENT or implemented by Sonoma shall not be deemed to be an admission of the adequacy of such measures should they fail to bring the Facility's storm water into compliance with applicable water quality criteria. However, should Sonoma be required to implement a treatment system pursuant to Paragraph 9(d) of this AGREEMENT, then CSPA will not make further demands for storm water treatment at the Facility pursuant to this AGREEMENT. Should Sonoma be required to implement a retention pond pursuant to Paragraph 9(e) of this

11

AGREEMENT, then CSPA will not make further demands for storm water retention at the Facility pursuant to this AGREEMENT.

13.     In addition to any site inspections conducted as part of meeting and conferring on additional measures set forth above, Sonoma shall permit representatives of CSPA to perform one (1) additional site visit to the Facility per year during normal daylight business hours during the term of this AGREEMENT, provided that CSPA provides Sonoma via e-mail with at least one week prior written notice and coordinates the site visit for a date and time on which the Facility General Manager and Environmental Manager are able to attend and that will cause minimal disruption to the Facility's operations.

14.     **Provision of Documents and Reports.**  During the life of this AGREEMENT, Sonoma shall provide CSPA with a copy of all documents submitted to the Regional Board or the State Water Resources Control Board ("State Board") concerning the Facility's storm water discharges, including but not limited to all documents and reports submitted to the Regional Board and/or State Board as required by the General Permit.  Such documents and reports shall be mailed, e-mailed, or otherwise provided in electronic format to CSPA contemporaneously with submission to such agency.  Within ten business (10) days of a written request (via e-mail or regular mail) by CSPA, Sonoma also shall provide CSPA a copy of all documents referenced in this AGREEMENT from the year prior to the request, including but not limited to logs, photographs, or analyses..

15.     **Amendment of SWPPP.**  Within sixty (60) days of the Effective Date of this AGREEMENT, Sonoma shall amend the Facility's SWPPP to incorporate all changes, improvements, sample log forms, and best management practices set forth in or resulting from this AGREEMENT.  Sonoma shall ensure that all maps, tables, and text comply with the requirements of the General Permit.  Sonoma shall ensure that the SWPPP describes all structural and non-structural BMPs, details the measures to be installed, and discusses why such BMPs will be effective in addressing the pollutant sources at the Facility.  A copy of the amended SWPPP shall be provided to CSPA within thirty (30) days of completion.

16.     **MITIGATION PAYMENT**.  In recognition of the good faith efforts by Sonoma to comply with all aspects of the General Permit and the Clean Water Act, and in lieu of payment

by Sonoma of any penalties, which have been disputed but may have been assessed in this action if it had been adjudicated adverse to Sonoma, the SETTLING PARTIES agree that Sonoma will pay the sum of forty-eighty thousand dollars ($48,000.00) to the Rose Foundation for Communities and the Environment ("Rose Foundation") for the sole purpose of providing grants to environmentally beneficial projects in San Francisco Bay watershed relating to water quality improvements. In making its funding decision, the SETTLING PARTIES jointly recommend that the Rose Foundation pay particular attention to funding projects benefitting water quality in Sonoma County. The SETTLING PARTIES also acknowledge that the Rose Foundation has full, unfettered discretion to make its own decisions. The SETTLING PARTIES will provide a joint letter to the Rose Foundation reflecting this recommendation. Payment shall be provided to the Rose Foundation as follows: Rose Foundation, 1970 Broadway, Suite 600, Oakland, CA 94607, Attn: Tim Little. Payment shall be made by Sonoma to the Rose Foundation within fifteen (15) calendar days of the District Court's entry of the Order dismissing the action described in Paragraph 2 of this AGREEMENT. Sonoma shall copy CSPA with any correspondence and a copy of the check sent to the Rose Foundation. The Rose Foundation shall provide notice to the SETTLING PARTIES within thirty (30) days of when the funds are dispersed by the Rose Foundation, setting forth the recipient and purpose of the funds.

17. **Fees, Costs, and Expenses**. As reimbursement for CSPA's investigative, expert and attorneys' fees and costs, Sonoma shall pay CSPA the sum of forty-nine thousand dollars ($49,000). Payment shall be made by Sonoma within fifteen (15) calendar days of the District Court's entry of the Order dismissing the action described in Paragraph 2 of this AGREEMENT. Payment by Sonoma to CSPA shall be made in the form of a single check payable to "Lozeau Drury LLP", and shall constitute full payment for all costs of litigation, including investigative, expert and attorneys' fees and costs incurred by CSPA that have or could have been claimed in connection with CSPA's claims, up to and including the Effective Date of this AGREEMENT.

18. **Compliance Oversight Costs**: As reimbursement for CSPA's future fees and costs that will be incurred in order for CSPA to monitor Sonoma compliance with this AGREEMENT and to effectively meet and confer and evaluate monitoring results for the Facility, Sonoma agrees to reimburse CSPA for its reasonable fees and costs incurred in overseeing the implementation of this AGREEMENT up to but not exceeding one thousand

13

dollars ($1,000.00) for the 2013-2014 wet season, up to but not exceeding five thousand dollars ($5,000.00) for the 2014-2015 wet season, and up to but not exceeding two thousand five hundred dollars ($2,500) for the 2015-2016 wet season. Fees and costs reimbursable pursuant to this paragraph may include, but are not limited to, those incurred by CSPA or its counsel to conduct site inspections, review water quality sampling reports, review annual reports, discussion with representatives of Sonoma concerning potential changes to compliance requirements, preparation and participation in meet and confer sessions and mediation, and water quality sampling. CSPA shall provide an invoice containing an itemized description for any fees and costs claimed. Up to three annual payments (one addressing any monitoring associated with the 2013-2014 wet season, one addressing monitoring associated with the 2014-2015 wet season, and one addressing monitoring associated with the 2015-2016 wet season) shall be made payable to "Lozeau Drury LLP" within thirty (30) days of receipt of an invoice from CSPA that contains an itemized description of fees and costs incurred by CSPA to monitor implementation of the SETTLEMENT AGREEMENT during the previous twelve (12) months. To the extent that Sonoma chooses to install a retention pond pursuant to Paragraph 9 above, then the final compliance oversight payment shall cover the period from the date of the 2014-2015 wet season payment through the termination date of the AGREEMENT.

19.     **Review by Federal Agencies.** CSPA shall submit this AGREEMENT to the U.S. EPA and the U.S. Department of Justice (hereinafter, the "Agencies") via certified mail, return receipt requested, within five (5) days after the Effective Date of this AGREEMENT for review consistent with 40 C.F.R. § 135.5. The Agencies' review period expires forty-five (45) days after receipt of the AGREEMENT by both Agencies, as evidenced by the return receipts, copies of which shall be provided to Sonoma upon receipt by CSPA. In the event that the Agencies comment negatively on the provisions of this AGREEMENT, CSPA and Sonoma agree to meet and confer to attempt to resolve the issue(s) raised by the Agencies. If CSPA and Sonoma are unable to resolve any issue(s) raised by the Agencies in their comments, CSPA and Sonoma agree to expeditiously seek a settlement conference with the Judge assigned to the Complaint in this matter to resolve the issue(s).

## NO ADMISSION OR FINDING

20.     Neither this AGREEMENT nor any payment pursuant to the AGREEMENT shall constitute evidence or be construed as a finding, adjudication, or acknowledgment of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule or regulation.  However, this AGREEMENT and/or any payment pursuant to the AGREEMENT may constitute evidence in actions seeking compliance with this AGREEMENT.

## MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

21.     In consideration of the above, and except as otherwise provided by this AGREEMENT, the SETTLING PARTIES hereby forever and fully release each other and their respective parents, affiliates, subsidiaries, divisions, insurers, successors, assigns, and current and former employees, attorneys, officers, directors and agents from any and all claims and demands of any kind, nature, or description whatsoever, and from any and all liabilities, damages, injuries, actions or causes of action, either at law or in equity, which the SETTLING PARTIES have against each other arising from CSPA's allegations and claims as set forth in the 60-Day Notice Letter and Complaint for storm water pollution discharges at the Facility up to and including the Termination Date of this AGREEMENT.

22.     The SETTLING PARTIES acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The SETTLING PARTIES hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from, or related to, the allegations and claims as set forth in the 60-Day Notice Letter and Complaint for storm water pollution discharges at the Facility up to and including the Termination Date of this AGREEMENT.

23. For the period beginning on the Effective Date and ending on December 16, 2017, CSPA agrees that neither CSPA, its officers, executive staff, members of its governing board nor any organization under the control of CSPA, its officers, executive staff, or members of its governing board, will file any lawsuit against Sonoma seeking relief for alleged violations of the Clean Water Act or violations of the General Permit at its facility located at 4276 Stage Gulch Road in Sonoma. CSPA further agrees that, beginning on the Effective Date and ending on December 16, 2017, CSPA will not support other lawsuits, by providing financial assistance, personnel time or other affirmative actions, against Sonoma facility located at 4276 Stage Gulch Road in Sonoma that may be proposed by other groups or individuals who would rely upon the citizen suit provision of the Clean Water Act to challenge the Facility's compliance with the Clean Water Act or the General Permit.

## TERMINATION DATE OF AGREEMENT

24. This AGREEMENT shall terminate on December 16, 2016, unless Sonoma chooses to construct a retention pond in accordance with this AGREEMENT, in which case this AGREEMENT shall terminate on December 16, 2017, or through the conclusion of any proceeding to enforce this AGREEMENT.

## DISPUTE RESOLUTION PROCEDURES

25. Except as specifically noted herein, any disputes with respect to any of the provisions of this AGREEMENT shall be resolved through the following procedure. The SETTLING PARTIES agree to first meet and confer to resolve any dispute arising under this AGREEMENT. In the event that such disputes cannot be resolved through this meet and confer process, the SETTLING PARTIES agree to request a settlement meeting before the Magistrate Judge assigned to this action. In the event that the SETTLING PARTIES cannot resolve the dispute by the conclusion of the settlement meeting with the Magistrate Judge, the SETTLING PARTIES agree to submit the dispute via motion to the District Court.

26. In resolving any dispute arising from this AGREEMENT, the Court shall have discretion to award attorneys' fees and costs to either party. The relevant provisions of the then-applicable Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure shall govern the

allocation of fees and costs in connection with the resolution of any disputes before the District Court. The District Court shall award relief limited to compliance orders and awards of attorneys' fees and costs, subject to proof. The SETTLING PARTIES agree to file any waivers necessary for the Magistrate Judge to preside over any settlement conference and motion practice.

## BREACH OF SETTLEMENT AGREEMENT

27. **Impossibility of Performance.** Where implementation of the actions set forth in this AGREEMENT, within the deadlines set forth in those paragraphs, becomes impossible, despite the timely good faith efforts of the SETTLING PARTIES, the party who is unable to comply shall notify the other in writing within seven (7) days of the date that the failure becomes apparent, and shall describe the reason for the non-performance. The SETTLING PARTIES agree to meet and confer in good faith concerning the non-performance and, where the SETTLING PARTIES concur that the non-performance was or is impossible, despite the timely good faith efforts of one of the SETTLING PARTIES, new performance deadlines shall be established. In the event that the SETTLING PARTIES cannot timely agree upon the terms of such a stipulation, either of the SETTLING PARTIES shall have the right to invoke the dispute resolution procedure described herein.

## GENERAL PROVISIONS

28. **Construction.** The language in all parts of this AGREEMENT shall be construed according to its plain and ordinary meaning, except as to those terms defined by law, in the General Permit, Clean Water Act or specifically herein.

29. **Choice of Law.** This AGREEMENT shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

30. **Severability.** In the event that any provision, section, or sentence of this AGREEMENT is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

31.   **Correspondence.**  All notices required herein or any other correspondence pertaining to this AGREEMENT shall be sent by regular, certified, overnight mail, or e-mail as follows:

<u>If to CSPA</u>:

Bill Jennings, Chairman
California Sportfishing Protection Alliance
3536 Rainier Road
Stockton, CA  95204
Tel: (209) 464-5067
deltakeep@me.com

And to:

Douglas J. Chermak
Michael R. Lozeau
Lozeau Drury LLP
410 12th Street, Suite 250
Oakland, CA 94607
Tel:  (510) 836-4200
doug@lozeaudrury.com
michael@lozeaudrury.com

<u>If to Sonoma</u>:

Trish Pisenti, Operations Manager
DPTW – Integrated Waste Division
500 Mecham Rd.
Petaluma, CA 94952
Tel: (707) 565-7958
trish.pisenti@sonoma-county.org

And to:

David R. McFadden
Deputy County Counsel
Office of the County Counsel
County of Sonoma
575 Administration Drive, Room 105A
Santa Rosa, CA 95403-2881
Tel:  (707) 565-2421
David.mcfadden@sonoma-county.org

Notifications of communications shall be deemed submitted on the date that they are e-mailed, postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any change of address or addresses shall be communicated in the manner described above for giving notices.

32. **Counterparts.** This AGREEMENT may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopied, scanned (.pdf), and/or facsimiled copies of original signature shall be deemed to be originally executed counterparts of this AGREEMENT.

33. **Assignment**. Subject only to the express restrictions contained in this AGREEMENT, all of the rights, duties and obligations contained in this AGREEMENT shall inure to the benefit of and be binding upon the SETTLING PARTIES, and their successors and assigns.

34. **Modification of the Agreement:** This AGREEMENT, and any provisions herein, may not be changed, waived, discharged or terminated unless by a written instrument, signed by the SETTLING PARTIES.

35. **Full Settlement.** This AGREEMENT constitutes a full and final settlement of this matter. It is expressly understood and agreed that the AGREEMENT has been freely and voluntarily entered into by the SETTLING PARTIES with and upon advice of counsel.

36. **Integration Clause.** This is an integrated AGREEMENT. This AGREEMENT is intended to be a full and complete statement of the terms of the agreement between the SETTLING PARTIES and expressly supersedes any and all prior oral or written agreements covenants, representations and warranties (express or implied) concerning the subject matter of this AGREEMENT.

37. **Authority.** The undersigned representatives for CSPA and Sonoma each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this AGREEMENT.

The SETTLING PARTIES hereby enter into this AGREEMENT.

Date: _____9/16_____, 2013          COUNTY OF SONOMA

                                    By:    David Rabbitt
                                    Title:   Chair, Board of Supervisors

Date: _____9/16_____, 2013          CALIFORNIA SPORTFISHING PROTECTION
                                    ALLIANCE

                                    By:    Bill Jennings
                                    Title:    Executive Director

**APPROVED AS TO FORM:**

                                    For DEFENDANT

Date: _____9 / 13_____, 2013        OFFICE OF THE COUNTY COUNSEL,
                                    COUNTY OF SONOMA

                                    By:    David R. McFadden, Esq.

                                    For PLAINTIFF

Date: _____9/16_____, 2013          LOZEAU DRURY LLP

                                    By:    Douglas J. Chermak, Esq.